## JACKSON, COOK & CO. vs. HOLLAND.

It would seem that the weight of authority, English and American, is, that a
livery stable keeper, at Common Law, has no lien—it may be acquired,
however, by special contract.

Motion to distribute money, in Whitfield Superior Court. Decided by Judge WALKER, at the May Term, 1860.

This case came up and was heard upon the following state of facts, to wit:

Joseph McDowell placed a certain grey stallion horse at the livery stable of Jesse Holland, in the town of Dalton, where said horse was fed, kept and cared for, for a period of thirteen months. McDowell rode and used the horse when he wished to do so, and in the spring of 1856, James Holland stood the horse for three months, and for that time paid his board. Jesse Holland charged McDowell ten dollars per month for keeping the horse. Sometime in the last of 1856, or the first of 1857, McDowell removed from Dalton to Loudon, Tennessee, and left the horse with Jesse Holland, to be delivered to Morgan & Mitchell, at a certain price, if they called for the horse; and if Jesse Holland sold the horse, to pay himself for keeping him out of the price he brought. Jesse Holland understood, from the arrangement, that the horse was left with him as security for what was due for keeping him. Jackson, Cook & Co. sued out an attachment against McDowell, which was levied on the horse, whilst he was in possession of the said Jesse Holland, under the arrangement aforesaid. By an agreement between the parties, the horse was sold as perishable property, under the provisions of the attachment laws of Georgia, and the money arising from the sale was preserved, to be disposed of by order of the presiding Judge, at the May Term of Whitfield Superior Court.

The question was, whether Holland, as a livery stable keeper, had a lien as such upon the horse, for feeding and taking care of him; and if he did not have such lien, did the understanding and arrangement under which the horse was left with him, create a lien?

After argument had, his Honor, Judge Walker, decided:

1st. That Holland, as a livery stable keeper, was not enti-

tled to a lien upon the horse, or the proceeds of the sale of the horse.

2d. But that, under the agreement between him and McDowell, Holland did have a lien, and was entitled to the payment of what was due him for keeping the horse, out of the proceeds of the sale.

This decision constitutes the error assigned in this case.

JACKSON, for the plaintiff in error.

J. A. GLENN, for the defendant in error.

*By the Court.*—LUMPKIN, J., delivering the opinion.

It seems that the horse levied on and sold under the attachment of Jackson, Cook & Co., against Joseph McDowell, was put at the livery stable of Jesse Holland, and, after being kept there some time, Joseph McDowell removed to the State of Tennessee, when this attachment was levied. Before leaving, he stated to Holland that he was on a trade with Morgan and Mitchell for the horse, and if they came, to let them have him at a certain price, and to pay himself out of the money. It was the understanding of Holland, as he swore, that he was to hold the horse as security for his debt.

The property being of a perishable nature, and it being expensive to keep the horse, it was agreed that he should be sold, and the judgment of the Court taken as to the priority of the conflicting liens upon the proceeds.

His Honor, Judge Walker, held, that at law, the livery keeper had no lien, but that Holland was entitled to be first paid out of this fund, by virtue of the special contract, and this decision is excepted to and brought here for revision.

Does a lien exist in favor of livery keepers, at common law? This question has been much discussed, both in England and in this country, and contrary to the understanding of many, in and out of the profession, I am bound to say, the weight of authority, on both sides of the Atlantic, is against the lien. (*See* 67 *Eng. Com. Law Rep.* 498; 5 *M. & W. Eexch. Rep.* 341; *Gainnell vs. Cook,* 3 *Hill's N. Y. Rep.* 341.) The whole doctrine is elaborately discussed, and all the English cases carefully considered in the

New York case. And the conclusion to which the Court came, was that the old doctrine of the common law, that livery stable keepers had no lien unless there be a special contract to that effect, remains unshaken.

One of the reasons is, that where horses are kept at livery, the owner takes and uses them at pleasure, whereas, a bailee only has a lien so long as he retains the uninterrupted possession. If the owner gets the property in his hands without fraud, the lien is at an end, and it will not be revived.by the return of the goods.

This doctrine does not extend to innkeepers who are not only obliged to keep the horses of their guests, but they become insurers against loss, by larceny or otherwise, whereas a livery-keeper may take or refuse a horse as he may see fit, and he is only responsible for ordinary care; and, in these respects, there is found a strong reason why they are not put upon the same footing with innkeepers and carriers, as to the right of lien.

The doctrine disallowing a lien does not extend to a bailee, for hire, who, by his labor and skill, has imparted additional value to the goods. Nor has it been extended to the trainer of a horse—the breaker of a colt or wild horse—nor to a farmer or stable keeper who receives a mare to be covered by a stallion, on account of the increased value, by reason of the foal. Neither does it apply to warehouse men, mechanics of any description, who repair your furniture, make your clothes, nor even to the blacksmith who shoes your horse.

Whether these distinctions be well taken (and are not some of them, at least, rather artificial in their reasoning)? I will not say. We will not—because we need not—pronounce an authoritative judgment upon this point. Any livery-keeper who has a popular representative in the Legislature, can readily procure an Act to be passed giving this lien, and I do not say it would be wrong.

2. Was the Court right in ruling that Holland was entitled to his lien, under the special contract? We think so. The horse was left in his custody, as a pledge for his pay, as well for the past as his future keep and care. The defendant directed him to pay himself out of his price or proceeds. Could McDowell, himself, after thus pledging the horse, take him out of Holland's possession without paying him?

We hold he could not. But, be this as it may, under the implied contract, whenever the horse was sold, Holland was entitled to be paid his debt. (1 *Parsons on Contracts,* 592, *and Notes. Gibson vs. Boyd,* 1 *Kerr's N. R. Rep.* 150.)

We affirm, therefore, the judgment of the Court below, on the second ground.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court, that the judgment of the Court below be affirmed.