### ELLIOTT *v.* HODGSON & JACKSON.

1. In this State livery-stable keepers have a statutory lien on stock placed in their care for keeping.
2. Such a lien includes not only the actual feeding of the horse placed with the livery-stable keeper, but also such charges as are directly connected with his keeping by the stableman and as are naturally in the line of a livery-stable keeper's business.

3. Expenses of transporting a horse by railroad to places where races are to be conducted, in or out of the State, of entering him in such races, and like expenses, are not such charges as would furnish the basis for a livery-stable keeper's lien under the statute.

4. If a horse were left with a livery-stableman to be boarded or kept at an agreed price, and the stable keeper had two or more stables in this State for the accommodation of stock, and by agreement with the owner the horse was kept at one or the other of such stables, the fact that he was not kept at one of the stables rather than another would not defeat his lien; but if a horse was delivered to a livery-stable keeper, and, under contract with the owner, was sent for racing purposes to distant points where it was kept, not in a stable of the liveryman, but in that of other persons, although the liveryman may have paid such stable charges under the contract, this would not give him a statutory lien upon the horse therefor.

5. Where proceedings were begun to foreclose a statutory lien in favor of a livery-stableman upon a horse, and equitable proceedings were commenced for the purpose of enjoining such foreclosure and recovering possession of the horse, and the whole case turned upon whether a livery-stable keeper's lien existed, and the amount thereof, and there was neither pleading nor evidence to show the assertion and effort to enforce any lien existing by contract, it was error to submit to the jury the question as to whether the owner of the horse agreed to give to the persons claiming to be livery-stablemen a lien upon the horse.

(*a*) This error was not cured by writing off a portion of the verdict, nor by stating to the jury, in a later portion of the charge, that unless the evidence showed that there was an express agreement for a lien, they would not consider the court's instruction on that subject. This again left it to the jury to determine whether there was an express agreement.

Submitted February 17,—Decided August 13, 1909.

Equitable petition. Before Judge Brand. Clarke superior court. January 31, 1908.

Hodgson & Jackson were proceeding to foreclose a livery-stable keeper's lien on a horse named "Gold Call," belonging to Charles S. Elliott, when the latter filed an equitable petition, seeking to enjoin them from selling the horse, and to obtain possession of it, offering to give bond. He alleged, among other things, the following facts: Defendants are engaged in the business of racing horses. Plaintiff contracted with one Reeves to take charge of the horse in controversy and enter him at such races as Reeves might see fit during the season of 1904, expressly stipulating that no one was to be allowed to handle the horse except Reeves, who agreed to pay all expenses which might accrue in the racing and caring for the animal, and to divide with the plaintiff equally the net proceeds of the premiums or purses which might be won by it; and it

was agreed that the plaintiff was to bear no part of any expense or cost which might accrue in that connection. Unknown to the plaintiff, Reeves delivered the horse to the defendants to be shipped to plaintiff, but they have refused to make delivery of it, though demanded, claiming a lien upon it as livery-stable keepers. After making the contract with Reeves, plaintiff was informed that the latter was in the employment of the defendants, that the contract which he made with the plaintiff would inure to their benefit, that in making such contract he was acting as their agent. There were also allegations touching damages difficult of computation. Under an order of the presiding judge the plaintiff was allowed to have possession of the horse, after having filed a bond with sureties, reciting the foreclosure of the lien and the denial of the indebtedness by the plaintiff, and conditioned to pay the eventual condemnation-money, if any, found to be due to the defendants upon their lien. The defendants in their answer set up the following, among other facts: Reeves was in the employment of defendants, who did business under the firm name of Overbrook Stables. As their agent he made a contract with plaintiff to care for and board the horse. Plaintiff was informed and knew that the contract was being made for the defendants. By its terms they were to take the horse and board and care for it at the rate of $30 per month. In addition to this the plaintiff was to pay all extra charges, such as for shoeing, shipping the horse, boots, and whatever other "paraphernalia" were necessary to be used in training it. Reeves was to have general supervision of it, he being an expert horseman, and was to carefully train it, care for it, and put it in proper condition for racing. When the racing season came on, defendants were to "campaign" the horse under the supervision of their agent Reeves, and plaintiff was to pay all expenses thereof, such as freight, entrance fees, and the like, in addition to the board. The board and other expenses amounted to $424.32. There were no winnings from races. Defendants were conducting a livery-stable and were engaged in the livery business. They contracted with the plaintiff as livery-stable keepers, and claimed a liveryman's lien against the horse for the above-stated amount. It having been released under bond and delivered to the plaintiff, defendants are entitled to a judgment against him and his sureties for the amount of the lien claimed by them. They also prayed judgment against the plaintiff

for all the items of the account, irrespective of whether they had a lien for all or only a part thereof. The jury found for the defendants $282.69 against the plaintiff and his sureties, and judgment was entered accordingly on the bond. The plaintiff moved for a new trial, which was refused, and he excepted.

*R. W. Milner, H. C. Tuck,* and *Alonzo Field,* for plaintiff.

*Shackelford & Shackelford,* for defendants.

ATKINSON, J. If Reeves acted as the agent of the defendants in making the contract with the plaintiff, whether his principals were known to the plaintiff at the time or not, in seeking to enforce the contract made by him or rights arising thereunder, the defendants would be bound by all the terms of his agreement. If that agreement was as contended by the plaintiff, the defendants had no lien upon the horse, as they were bound to pay all the expenses incurred in connection with keeping it and entering it at races. The defendants by their pleadings allege that they received the horse under the contract made by Reeves with the plaintiff; and therefore they are not in a position of setting up a livery-stableman's lien on account of a horse received for its keeping from a third person, regardless of the true ownership. As to this feature of the case it must depend on what was the contract, not upon what rights the defendants might have on account of caring for the horse independently of such a contract with the owner. Livery-stable keepers have a lien on the stock placed in their care for keeping. Civil Code, §2810. At common law a livery-stable keeper had no lien unless by contract therefor. *Jackson* v. *Holland,* 31 *Ga.* 339. His lien in this State is statutory. Different definitions have been given of a livery-stable keeper. In 19 Am. & E. Enc. L. (2d ed.) 430, it is said: "A livery-stable is a building where horses or vehicles are kept or let for hire. A livery-stable keeper is of course the keeper of such a stable." Other definitions are: "One whose business it is to keep horses for hire, or to let, or to keep, feed, or board horses for others." Abbott's L. D.; Anderson's L. D.; Black's L. D. "One who takes horses to bait and board; and he usually keeps horses to let." Groves *v.* Kilgore, 72 Me. 489. And a livery-stable has been said to be "A place where horses are groomed, fed, and hired; where vehicles are let." Williams *v.* Garignes, 30 La. Ann. 1094. The Standard Dictionary defines a livery-stable to be "A stable where horses are kept at livery and for hire, and vehicles are let."

Webster's International Dictionary defines a livery-stable to be "A stable where horses are kept for hire, and where stabling is provided." We do not think that it would be absolutely necessary for a stable-keeper to exercise all of the different functions which may sometimes be performed by him, and which are mentioned in the different definitions above quoted, in order to be a livery-stable keeper within the meaning of the lien law, but his business must be substantially that so indicated. Some livery-stables may do a more contracted business than others, without destroying their status as such. The question is one of substance rather than of verbal and exact definition. Whether or not the defendants were livery-stable keepers was a question of fact. If they were not, they had no right to a lien as such, although they might have kept the plaintiff's horse under a contract to do so. If they were livery-stable keepers, and the contract with the plaintiff was as contended by them, they were entitled to a lien, and this would include not only the actual feeding of the horse but also such charges directly connected with his keeping as were naturally in the line of a livery-stable keeper's business. Carrying horses to distant race-tracks and there racing them is not a part of keeping a livery-stable, within the meaning of the lien law. Expenses of transporting the horse by railway to places where races were to be conducted, in and out of the State, or of entering it in such races, and like expenses, were not such charges as would furnish the basis for a livery-stable keeper's lien. We are not dealing with questions of bailment generally, or labor liens, or common-law liens, but with the particular statutory lien of a livery-stable keeper as provided in Civil Code, §2810, which was sought to be foreclosed in this case. If a horse were left with a livery-stableman to be boarded or kept at a specified price, and the liveryman had stables in two or more towns in the State, where he conducted business, and by agreement with the owner he was kept in different stables of the same liveryman, the latter would doubtless have a lien not only for the charge at the original stable where the horse was placed, but at the other stables of the keeper in this State. But a livery-stable keeper's lien is for the benefit of the keeper of the stable where the horse is cared for. If the defendants were livery-stable keepers, and, under contract with the plaintiff, sent the horse for racing purposes to distant points, where it was kept, not in the stable of the defendants,

but in the stable of other persons, although the defendants may have paid the stable charges, this would give them no lien upon the horse for the keep. Such expenses might raise a claim on behalf of the defendants as contract charges, if their contention as to the contract was correct, but would not create a lien in their favor as livery-stable keepers.

The presiding judge charged: "On the other hand, if you believe the contract was made as contended by defendants, that is, made by Elliott with Reeves as agent for Hodgson & Jackson, and the terms were stipulated as insisted upon by the defendants, and he had expressly agreed to bear all expenses, as well as feeding the horse, and agreed to give them a lien upon it, then it would be your duty to find out what the evidence shows that to be, and return a verdict in their favor against the plaintiff for whatever it amounts to;" and also: "If you believe in this case, however, that Elliott did not make that express contract that he should pay for the feeding of the horse and bear all these expenses and give a lien for the entire thing, but that he did agree to pay for, and that he should have a lien therefor, for feeding and keeping the horse and training him while here and elsewhere, and taking care of him and attending to him here and elsewhere, and that they have not been paid, then the court instructs you that if the defendants themselves have borne all the expense of feeding him here and elsewhere, that the defendants would be entitled to a verdict against the plaintiff." There was no evidence of any agreement on the part of the plaintiff that the defendants should have a lien for any particular services, nor was any lien by contract set up in the pleadings. If they had a lien, it was not by contract, but such as the statute gave them. As there was a conflict in the evidence as to what was the contract, and as the defendants were claiming a lien as created by statute because of an alleged contract for the keeping of the horse, this reference to a lien by contract, several times repeated, was not adjusted to the evidence, and was calculated to mislead the jury, and perhaps cause them to think that a contract to do certain things in regard to a horse included a contract to create a lien upon it for those services, whether they were such as the statute in this State would create a lien for or not. It is true that the judge wrote off a part of the recovery, and left standing only what he considered well authorized by the evidence; and also that he charged that un-

less the evidence showed that there was an express contract for a lien, the jury would not consider the court's instructions on that subject; but we can not say what effect on the minds of the jury may have been produced by these references to whether the plaintiff had agreed or contracted for the defendants to have a lien on the horse for various services, when there was no evidence to authorize them. This error went not merely to the question of amount, but to the question of establishing a lien. These charges may also have led the jury to believe that they might find a lien to exist in favor of the defendant for items which were not properly those of a livery-stable keeper.

Taken alone, some of the charges on which error was assigned were subject to criticism in using such expressions in regard to the defendants as, "in their line of business as livery-stable keepers," and, "they would have a lien as livery-stable keepers for all these items, if you find that to be the contract." Expressions of this character standing alone might have been understood by the jury as meaning that the presiding judge recognized the defendants as livery-stable keepers, and dealt with them as such, whereas whether they were or not was a question for the jury. Although qualified by other portions of the charge, it would have been better not to have so charged as to authorize such impressions on the mind of the jury. But this will probably not occur on another trial.

*Judgment reversed. All the Justices concur.*